**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-03004-DDD-KLM

QWEST CORPORATION, LEVEL 3 COMMUNICATIONS, LLC, and GLOBAL CROSSING TELECOMMUNICATIONS, INC.,

   Plaintiffs,

v.

PEERLESS NETWORK OF ARIZONA, LLC, PEERLESS NETWORK OF WASHINGTON, LLC, PEERLESS NETWORK OF UTAH, LLC, PEERLESS NETWORK OF OREGON, LLC, PEERLESS NETWORK OF NEW MEXICO, LLC, PEERLESS NETWORK OF NORTH DAKOTA, LLC, PEERLESS NETWORK OF MINNESOTA, LLC, PEERLESS NETWORK OF COLORADO, LLC, and AIRUS, INC.,

   Defendants.

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO
STAY THE CASE AND REFER ISSUES TO THE FCC**

Lumen's Motion (ECF No. 41) asks the Court to refer three issues to the FCC under the doctrine of primary jurisdiction:

1. Are toll-free calls (i.e., 1-800, 1-866, 1-877, etc.) always interexchange calls subject to tariffed switched access charges?

2. Are Responsible Organizations ("Resp Orgs") required to populate the SMS/800 database with their own Carrier Identification Code ("CIC") or the CIC of a carrier they have specifically engaged, or can a Resp Org populate the database with CIC 0110, and route toll-free calls to a Regional Bell Operating Company ("RBOC"), such as Qwest Corp., for completion over local interconnection trunk groups?

1

3. If a Resp Org routes a toll-free call over a local interconnection trunk group utilizing CIC 0110, is the Resp Org required to pay the RBOC its tariffed switched access charges depending on the end points of the call (intrastate switched access if the call originates and terminates in the same state, and interstate switched access if the call originates and terminates in different states)?

Little of Peerless's October 7, 2022 Response to Lumen's Motion to Stay the Case and Refer Issues to the FCC (ECF No. 46) goes to the question on which Lumen's Motion turns: whether these three questions "require resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body." *Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1038 (10th Cir. 1993). What little Peerless *does* say that is on point confirms that referral will "promote[] regulatory uniformity" and apply "agency expertise" on "issues of fact not within the conventional experience of judges." *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005). The Court therefore should stay this action and refer these issues to the FCC.

## I. THESE QUESTIONS RAISE COMPLICATED AND TECHNICAL ISSUES, INCLUDING ISSUES OF FIRST IMPRESSION, THAT THE FCC IS PARTICULARLY SUITED TO ADDRESS.

There is neither need nor space to correct all the errors in Peerless's description of the underlying facts (though we will address a few whoppers here). What matters, and what Peerless's Response confirms, is that these are technical issues within the peculiar domain of the FCC, the agency tasked with overseeing the telecommunications industry. That makes these issues fit for referral under the primary jurisdiction doctrine.

Peerless acknowledges that primary jurisdiction is "properly invoked" when a claim "requires resolution of an issue of first impression" or "a particularly complicated issue that Congress has committed to a regulatory agency." ECF No. 46 at 10 (quoting *Qwest Commc'n Co.*

2

*v. Aventure Commc'n Tech, LLC*, 86 F.Supp.3d 933, 996 (S.D. Iowa 2015)). Lumen noted in its Motion that "issues two and three are issues of first impression that impact the entire telecommunications industry." ECF No. 41 at 9. Nowhere in Peerless's Response does it dispute this. Instead, it merely argues that issues one and three—notably, omitting issue two—are "guided"—though it does not claim issue three is not actually "answered"—by other FCC decisions and regulations. ECF No. 46 at 10–11. Peerless also acknowledges that even after Lumen made a prior presentation to the FCC on use of CIC 0110, "no action was taken" on this issue. ECF No. 46 at 5 n.11.

Peerless nevertheless suggests that proposed issue 2—the one it left out—is "negated" by Lumen's purported lack of standing to enforce Somos's tariff. *See* ECF No. 46 at 16. But tariffs are not private contracts: "by virtue of federal law a tariff is more conclusive than a contract and is said to have the status of a regulation." *Metro E. Ctr. for Conditioning & Health v. Qwest Commc'ns Int'l, Inc.*, 294 F.3d 924, 926 (7th Cir. 2002). Lumen may assert claims under Section 201(b) when it is injured by Peerless's failure to comply with its legal obligations, or when Peerless engages in unjust or unreasonable conduct. *See Aventure Commc'ns Tech., LLC v. Sprint Commc'ns Co. L.P.*, 224 F. Supp. 3d 706, 764 (S.D. Iowa 2015) (Qwest "met the threshold pleading requirement of stating a cognizable injury under § 201(b)" by identifying conduct that violated 47 U.S.C. § 223, even though it "does not assert a private cause of action or remedy under § 223"). Whether Peerless's failure to populate the SMS/800 database with its own CIC constitutes an unjust and unreasonable action under Section 201(b)—issue 2—is undisputedly a matter of first impression, as is issue 3. For that reason alone they should be referred to the FCC.

Furthermore, even a cursory review of the parties' filings—both Lumen's Motion and Peerless's Response—make plain the complicated and technical nature of all three issues. Lumen's

Motion shows how these issues arise from particular requirements of the Communications Act and implementing regulations as they apply to the exchange of toll-free telephone traffic, a specific subset of interexchange communications. *See* ECF No. 41 at 2–8. While Peerless's Response attempts to recast the specific details of the dispute, it confirms the setting within the telecom regime. *See* ECF No. 46 at 2. Moreover, in contesting Lumen's points, Peerless raises many other issues specific to the telecommunications industry, including other potentially applicable standards of the Communications Act. *See*, *e.g.*, ECF No. 46 at 3 (referencing "equal access mandate imposed on all BOCs"); *id.* at 7 n.14 (citing 47 U.S.C. § 272(e)(3)). This confirms all three issues are squarely within the FCC's realm.

Where Peerless truly goes awry is its attempt to redefine the nature of the disputes. For example, it complains that Lumen failed to "shut down CIC 0110" and that not permitting Lumen to use the CIC "deprives Peerless of equal access" to the "local exchange carrier's network." ECF No. 46 at 5, 10. That is just not true. CIC 0110 is not a facility or physical structure in Lumen's network; it is merely a code directing call routing. Its current use ensures RBOCs like Qwest can efficiently complete what historically had been intraLATA calls. Peerless, knowing toll-free traffic would be routed and billed one way if Lumen knew it was Peerless's traffic, conceals that information, using the pseudonymous CIC 0110 instead of its own CIC code. This sends false signals that causes the traffic to be improperly routed along call paths and over facilities that would not be used if Peerless properly identified itself. *See* ECF No. 41 at 4–6.

Thus, Peerless's claim that the underlying dispute turns on how this traffic is measured (*see* ECF No. 46 at 11) or on giving Peerless access to Lumen's network (*see id.* at 3) misconstrues what this dispute is about. Peerless is not precluded access to Lumen's network; the issue is how the traffic is supposed to be routed through that network. This dispute arose because Peerless

4

withholds material information—its own CIC code—and supplies false information—a CIC code associated with no carrier—thereby causing that traffic being routed as local calls, instead of interexchange calls. The fundamental question is whether Peerless can properly supply this misleading code and withhold information that allows the calls to be correctly routed. The FCC has never answered this question before; Peerless does not claim otherwise. The FCC therefore should be allowed to address it in the first instance.

Peerless also suggests that Lumen has access to information identifying Peerless as the carrier responsible for transporting the call, because calls sent using CIC 0110 are also associated with a "routing number" associated with the 8YY number. *See* ECF No. 46 at 9–10. This misses the point completely. As Lumen explained in its Motion, "[w]hen a carrier routes a toll-free call to CIC 0110, the RBOC receives the call with its routing number; as a result, the RBOC routes the calls as if they are intraLATA calls, over local interconnection trunk groups." ECF No. 41-1 (Wharton Dec.) ¶ 7. In other words, instead of the call appearing as a toll-free call subject to access charges, the combination of the routing number and CIC 0110 makes the call appears to be a local call. To compound the problem, the 10-digit routing number need not be identified with the Responsible Carrier or RespOrg; the RespOrg can obtain permission from another carrier to route the call for it. Thus, the routing number, far from solving the problem, actually creates the confusion. Peerless's failure to provide correct information that would eliminate this confusion and allow the calls to be routed over the correct facilities drives this dispute. The FCC should be permitted to determine whether this conduct complies with its standards and expectations for the industry.

Thus, the purposes of the primary jurisdiction doctrine—promoting regulatory uniformity and applying agency expertise—are served by referring these issues to the FCC. *See S. Utah Wilderness All.*, 425 F.3d at 750.

## II. PEERLESS'S ATTEMPTS TO ADDRESS THE MERITS, BESIDES BEING BASELESS, CONFIRM THE PROPRIETY OF REFERRAL TO THE FCC.

In arguing that its use of CIC 0110 is proper, Peerless claims CIC 0110 "continues to be used by at least some incumbent LECs." ECF No. 46 at 4. In support, Peerless cites a 14-year-old decision, *Digital Freedom v. Commonw. Tel. Co.*, 2006 WL 8448773, at *4–5 (M.D. Penn. March 30, 2006). That case concerned a carrier's argument regarding another toll-free carrier's "misuse of the generic 0110 CIC," which "does not identify a carrier" and thus prevented "compensat[ion] for use of its network." *Id.* at *4. This is hardly support for Peerless's claim that its use of CIC 0110 is proper. What's more, the Court deemed these issues to be "within the special expertise" of the FCC and state public utility commissions ("PUCs"), prompting the Court to decide that "the doctrine of primary jurisdiction dictates that such challenges should be brought to the PUC and/or the FCC." *Id.* at *5, *7.[1] Thus, the very cases Peerless cites shows that these issues are squarely within the FCC's wheelhouse and properly considered in the first instance by the FCC.

Lumen also shows how Peerless's conduct is contrary to industry guidelines. In response, Peerless asserts that, absent FCC order, industry guidelines are merely voluntary. *See* ECF No. 46 at 8. This does not change the fact that Peerless's disregard of those industry-wide standards is unjust and unreasonable, giving rise to Lumen's claims under Section 201(b). "Despite their voluntary nature, industry guidelines may be relevant in determining whether certain practices comply with section 201(b)'s requirement that carrier practices be just and reasonable." *In the*

---

[1] Lumen has not found any discussion of subsequent proceedings or decisions on this issue by either the FCC or the state commissions.

*Matter of Erdman Techs. Corp.*, 15 FCC Rcd. 7232, 7245 (1999). Indeed, to the extent the FCC has *not* yet adopted industry guidelines by affirmative order, this is all the more reason it must be permitted to decide whether a practice that runs contrary to widely followed industry guidelines are unjust and unreasonable.

Peerless also hints that the issues underlying this dispute are problems of Lumen's own making, because Qwest has not fully transitioned from the so-called "antiquated" Time Division Multiplex ("TDM") technology to the Internet Protocol facilities that Peerless (and Lumen, in part) use. *See* ECF No. 46 at 6. TDM is the format underlying essentially the entire public switched telephone network ("PSTN"). *See In the Matter of Connect Am. Fund*, 26 FCC Rcd. 17663, 18006 ¶ 940 (2011). The FCC has devoted significant attention in recent years to the interconnection between PSTN traffic, exchanged in TDM format, and Voice over Internet Protocol ("VoIP") traffic. *See id.* Among other things, the FCC has instructed that, in order for tariff charges to apply, traffic that originates and/or terminates in IP format must occur in TDM format "and not in IP format." *In the Matter of Teliax Colorado, LLC Tariff F.C.C. No. 1*, 36 FCC Rcd. 8285 (2021) (citing *Connect America Fund*, 26 FCC Rcd. 17663 ¶ 940). Traffic that is exchanged exclusively in IP format and does not use TDM or touch the PSTN "falls outside of the Commission's intercarrier compensation framework," and charges for such traffic "cannot be imposed via tariffs." *Teliax Colorado, LLC*, 36 FCC Rcd. 8285 ¶ 9. The fact that Qwest's facilities are TDM is the very reason this traffic is subject to the FCC's framework, and what allows tariffed charges in the first place. To the extent Peerless suggests the interplay between its IP facilities and Qwest's TDM facilities influence the outcome (though frankly it does not), given the FCC's careful oversight of this very subject, this too is an additional reason the Court should entrust these issues to the FCC.

Thus, each point Peerless raises as it attempts to address the merits of this dispute fails. More importantly for purposes of this Motion, they also demonstrate that these are the very kinds of issues the doctrine of primary jurisdiction dictates should be referred to the FCC as the agency responsible for overseeing the telecommunications industry.

### III.   THE COURT SHOULD STAY THIS PROCEEDING WHILE THE FCC DECIDES THESE ISSUES.

As noted in the Motion, Section 207 of the Communications Act permits claims against carriers to be raised either to the FCC or in a District Court, though it prohibits pursuing "both such remedies." ECF No. 41 at 14–15 (quoting 47 U.S.C. § 207). Contrary to Peerless's insinuation, bringing this action in this Court did not "destroy[] the FCC's jurisdiction." ECF No. 46 at 11. The very existence of the primary jurisdiction doctrine proves otherwise: case after case has been raised in a district court, then stayed (in part or in whole) so specific underlying issues could be decided by the FCC.[2]

Section 207's prohibition against pursuing "both such remedies" [i.e., bringing a complaint to the FCC and a district court] simply means that Lumen cannot pursue "several bites at the apple," as the cases Peerless cites show. ECF No. 46 at 15 (quoting *Premiere Network Servs., Inc. v. SBC Commc'n, Inc.*, 440 F.3d 683, 688–89 (5th Cir. 2006)). That is why Lumen's Motion is both a motion to refer issues to the FCC and a motion to stay proceedings in this Court while the

---

[2] *See*, for example, the following cases, in each of which the plaintiff moved for referral to the FCC after bringing the action in district court: *Sprint Commc'ns Co., L.P. v. Native Am. Telecom, LLC*, No. CIV. 10-4110-KES, 2012 WL 591674, at *1 (D.S.D. Feb. 22, 2012); *Sancom, Inc. v. AT&T Corp.*, 696 F. Supp. 2d 1030, 1032, 1043 (D.S.D. 2010); *N. Valley Commc'ns, LLC v. Qwest Commc'ns Corp.*, No. CIV. 09-1004, 2010 WL 3909932, at *1 (D.S.D. Sept. 29, 2010); *Pac-W. Telecomm, Inc. v. MCI Commc'ns Servs., Inc.*, No. 1:10-CV-01051, 2011 WL 1087195, at *4 (E.D. Cal. Mar. 23, 2011); *All Am. Tel. Co. v. AT & T, Inc.*, No. 07 CIV. 861 WHP, 2010 WL 7526933, at *1 (S.D.N.Y. Jan. 19, 2010); *Lucas v. Telemarketer Calling From (407) 476-5680*, No. 1:12-CV-00630, 2014 WL 3845893, at *4 (S.D. Ohio Aug. 5, 2014); *Michigan Bell Tel. Co. v. MFS Intelenet of Michigan, Inc.*, 16 F. Supp. 2d 828, 834 (W.D. Mich. 1998).

FCC resolves those issues. Once the FCC decides these issues, neither Peerless nor Lumen can ask the Court to undo that decision; the FCC's findings will be binding on district courts, including this Court. *See Level 3 Commc'ns, L.L.C. v. Colorado Pub. Utilities Comm'n*, 300 F. Supp. 2d 1069, 1081 (D. Colo. 2003) (FCC decision "is binding on state agencies and the district court"); *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302, 1307 (11th Cir. 2015) ("a district court must afford FCC final orders deference").

Because what the FCC decides will control, there is only one bite at the apple. Thus, nothing about this Motion, or numerous motions just like it that have been submitted and granted in the past, present any conflict with Section 207. The Court should stay this action while the issues being referred to the FCC are pending, then use the FCC's findings to resolve what issues remain thereafter.

## IV. CONCLUSION

Lumen respectfully requests that the Court refer these three issues to the FCC, and stay this case during the pendency of the referral.

Dated: October 20, 2022

Respectfully submitted,

*/s/ Charles W. Steese*
Charles W. Steese, #26924
Douglas N. Marsh, #45964
Kathleen F. Guilfoyle, #55284
ARMSTRONG TEASDALE LLP
4643 South Ulster Street, Suite 800
Denver, Colorado 80237
Telephone: (720) 200-0676
csteese@armstrongteasdale.com
dmarsh@armstrongteasdale.com
kguilfoyle@atllp.com

*Attorneys for Plaintiffs*

9

**CERTIFICATE OF COMPLIANCE**

  I hereby certify that the foregoing pleading complies with the Court's Practice Standard III(A)(1) of 4,000 words, in that it contains 2,696 words, excluding the caption, signature block, certificate of service, and certificate of compliance.

                */s/ Charles W. Steese*
                Charles W. Steese

**CERTIFICATE OF SERVICE**

        The undersigned certifies that on October 20, 2022, a true and correct copy of the foregoing pleading was filed and served upon all counsel of record via the CM/ECF system.

                                              */s/ Charles W. Steese*
                                              Charles W. Steese