IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:21-cv-03004-DDD-KLM

QWEST CORPORATION; and
LEVEL 3 COMMUNICATIONS, LLC; and
GLOBAL CROSSING TELECOMMUNICATIONS,

    Plaintiffs and counter-claim defendants,

v.

PEERLESS NETWORK OF ARIZONA, LLC; and
PEERLESS NETWORK OF WASHINGTON, LLC; and
PEERLESS NETWORK OF UTAH, LLC; and
PEERLESS NETWORK OF OREGON, LLC; and
PEERLESS NETWORK OF NEW MEXICO, LLC; and
PEERLESS NETWORK OF NORTH DAKOTA, LLC; and
PEERLESS NETWORK OF MINNESOTA, LLC; and
PEERLESS NETWORK OF COLORADO, LLC; and
AIRUS, INC,

    Defendants and counter-claim plaintiffs.

## ORDER GRANTING MOTION TO STAY

Plaintiffs Qwest Corporation, Level 3 Communications, LLC, and Global Crossing Telecommunications, Inc. ("Lumen") move to refer three issues to the Federal Communications Commission under the doctrine of primary jurisdiction and to stay discovery during the pendency of the referral. *Doc.* 41. Since adjudication of these issues implicates technical questions whose resolution Congress has entrusted to the FCC, the motion is granted.

- 1 -

## BACKGROUND

This case concerns payment for toll-free long-distance phone calls. Customers typically pay for their own long-distance calls. *Doc.* 41 at 2. When people call toll-free numbers, the call's recipient, rather than the caller, is responsible for payment. *Id.* at 3. Toll-free calling, also known as "8YY calling," uses numbers that begin with 1-800 and similar formulations. *Doc.* 41 at 2. To ensure that toll-free call recipients pay for the calls, the national SMS/800 database associates each toll-free number with its long-distance carrier. *Id.* The carrier associated with a toll-free number, known as the Responsible Organization or "Resp. Org.," is responsible for populating the database with a Carrier Identification Code ("CIC") for the long-distance carrier responsible for routing the toll-free call. *Id.*

This case arises from the use of one such CIC, 0110. Prior to the passage of the Telecommunications Act of 1996, the Regional Bell Operating Companies ("RBOCs"), the successors to the old AT&T, could only operate within a specified Local Access and Transport Area ("LATA"). *Docs.* 41 at 4 and 46 at 2. When callers initiated toll-free long-distance calls in between LATAs, they used the traditional CIC system, but when the calls were within the same LATA, the RBOCs used the 0110 CIC to the RBOC servicing that region. *Docs.* 41 at 4, 46 at 2-3. The Telecommunications Act of 1996 permitted the RBOCs to offer calls outside their LATA, rendering the historic use of the 0110 CIC obsolete. *Docs.* 41 at 5, 46 at 4.

Lumen claims that Peerless "would populate certain 8YY numbers within the SMS/800 database with CIC 0110 instead of their own CIC so toll-free calls would be routed to the RBOC, instead of directly to them." *Doc.* 41 at 6. According to this allegation, Peerless, rather than

covering the cost of their own prepaid subscribers, would label them with the generic CIC 0110, so that the local RBOC would take on the charges. *Id.* at 6-7.

Peerless attributes this dispute to Lumen's unwillingness to upgrade from Time Division Multiplex ("TDM") technology to Session Initiation Protocol ("SIP") technology. According to Peerless, TDM technology requires carriers to convert toll free numbers to routing numbers and would require the defendants to purchase TDM connections to convert their own calls into TDM. *Doc.* 46 at 6. SIP technology allows carriers to skip a step, since it eliminates the need to convert the toll-free number to a routing number. *Id.* Peerless alleges that Lumen's use of TDM technology could require it to purchase TDM connections in each of the twenty-seven LATAs where the plaintiffs operate. *Id.* To avoid that expense, Peerless uses CIC 0110 to connect with the plaintiff in a single location, thus avoiding substantial expense. *Id.* at 6-7. Peerless claims that it has been willing to pay Lumen any access charges and that Lumen lacks the ability to measure traffic traversing its network on CIC 0110. *Id.* at 7. Further, Peerless argues that Lumen, in attempting to deprive Peerless of the right to use CIC 0110, violates its responsibility to provide Peerless with equal access to its network. *Id.* at 5.

Lumen moves to refer the following three issues to the FCC:

1. Are toll-free calls (i.e., 1-800, 1-866, 1-877, etc.) always interexchange calls subject to tariffed switched access charges?

2. Are Responsible Organizations ("Resp Orgs") required to populate the SMS/800 database with their own Carrier Identification Code ("CIC") or the CIC of a carrier they have specifically engaged, or can a Resp Org populate the database with CIC 0110, and route toll-free calls to a Regional Bell Operating Company ("RBOC"), such as Qwest Corp., for completion over local interconnection trunk groups?

3. If a Resp Org routes a toll-free call over a local interconnection trunk group utilizing CIC 0110, is the Resp Org required to pay the RBOC its tariffed switched access charges depending on the end points of the call (intrastate switched access if the call originates and terminates in the same state, and interstate switched access if the call originates and terminates in different states)?

*Doc.* 41 at 8. Peerless opposes the motion on the grounds that the court benefits from sufficient guidance from the FCC and court opinions, and because the critical issue for determination, according to Peerless, is the accuracy of Lumen's bills, a question that does not require FCC referral. *Doc.* 46 at 10-11.

## DISCUSSION

### I. Applicable Law

"Primary jurisdiction is invoked in situations where the courts have jurisdiction over the claim from the very outset, but it is likely that the case will require resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body." *Mical Commc'ns, Inc. v. Sprint Telemedia, Inc.*, 1 F.3d 1031, 1038 (10th Cir. 1993). "When a decision by a court would threaten the uniformity of a regulatory scheme or require the court to confront issues of fact outside its conventional experience, the doctrine of primary jurisdiction allows the court to suspend the judicial process and direct the parties to seek a decision before the appropriate administrative agency." *S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005) (McConnell, J.).

The doctrine of primary jurisdiction "promotes regulatory uniformity by preventing courts from interfering sporadically with a comprehensive regulatory scheme" and "promotes resort to agency expertise by allowing courts to consult agencies on issues of fact not within the conventional experience of judges." *Id.* at 751 (internal quotation marks omitted).

Accordingly, a court considering invoking this doctrine is required "to consider whether the issues of fact in the case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to the particular agency." *TON Servs., Inc. v. Qwest Corp.*, 493 F.3d 1225, 1239 (10th Cir. 2007).

## II.   Referral to the FCC is warranted

Application of those three factors here shows that referral to the FCC is warranted. Most importantly, the issues that Lumen raises "will require resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body." *Mical*, 1 F.3d at 1038. Peerless argues that the Lumen's third issue is "guided by the Commission's *8YY Access Reform Report and Order* and implementing rules at 47 C.F.R. § 51.905 and 51.907(i)." *Doc.* 46 at 11. The interaction of the various regulatory mandates and FCC guidance in this area is not within the usual experience of this court. Peerless does not dispute Lumen's contention that its second issue requires FCC referral. Lumen concedes that the first issue, the application of tariff switched access charges to toll-free calls, "should be relatively simple given that the FCC has already answered the question over 20 years ago." *Doc.* 41 at 13. But I agree that because it is intertwined with the other issues, it is appropriate for referral.

These issues also are in large part within the FCC's administrative discretion. Peerless does not argue otherwise, but instead contends the FCC has already provided sufficient guidance and that the case does not require conclusive resolution of those issues. As explained above, I am not convinced. And these are issues that could apply to similar situations beyond this case and these parties, so referral to the FCC would

promote uniformity in the regulation of long-distance calls and would ensure that the parties can litigate the case against the backdrop of more reliable agency guidance.

### III. Referral to the FCC does not violate the Telecommunications Act of 1934

Peerless claims that referral of these issues is impermissible since the Telecommunications Act of 1934 requires parties to make a complaint either to the FCC or to a district court. *Doc.* 46 at 12. According to Peerless, Lumen's decision to file in district court "destroyed the FCC's jurisdiction." *Id.* at 11. Referral of these issues to the FCC does not strip this court of jurisdiction over the case. Lumen seeks monetary damages from Peerless, a remedy that the FCC cannot provide. Rather than seeking a transfer of jurisdiction, Lumen simply moves for the resolution of three discrete issues.

## CONCLUSION

It is ORDERED that:

The MOTION TO STAY AND REFER ISSUES TO THE FCC (Doc. 41) is GRANTED; and

The three issues listed in the motion (Doc. 41 at 8) are REFERRED to the Federal Communications Commission for resolution; and

The Clerk of the Court is directed to administratively close the case pending the Federal Communications Commission's resolution of the disputed issues; and

- 7 -

The parties shall file a notice of the Federal Communications Commission's resolution no later than fourteen days after its publication.

DATED: March 31, 2023          BY THE COURT:

_____
~~Daniel~~ D. Domenico
United States District Judge